Mr. Sadie. May it please the court. These 22 defendants have all been deemed categorically ineligible for a sentence reduction, even though their sentences were based on a retroactive guideline amendment that lowered their offense level. In Padilla-Diaz, this court rejected arguments that the Sentencing Commission's policy statement, 1B1.10b2a, which disqualified all defendants who received variances from retroactive guideline amendments, they rejected the argument that it was inconsistent with federal sentencing statutes and the Fifth Amendment. The question for this court is whether the intervening authority of Hughes undermines that authority and renders it not governing this case. Hughes didn't concern this specific question, though, correct? Very closely related question. The question in Hughes was whether a sentence imposed under Rule 11c1c was based on the retroactive amendment. And the question was whether the amended guideline was based on it. So that is the exact same question here. Well, it isn't exactly, because the text of Amendment 782 allows the court to reduce the prison term only if the reduction is consistent with the applicable policy statements. And the most applicable one is still 1B1.10b. The question is whether it is applicable after Hughes. If Hughes has undermined the reasoning and How could it not be applicable? The amendment refers to applicable sentencing guidelines. Because under Levant, the Supreme Court has held that where a policy statement is inconsistent with a statute, that policy statement is not in effect. And here, we have intervening authority that completely rejects the reasoning undergirding the decision in Padilla D.S. This is what Judge Graber just referred to. But the relevant statute, 3582, says it has to be based on a sentencing range, makes it eligible, to the extent there, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission. So what Hughes didn't have was, it was interpreting what based on meant, but it wasn't interpreting whether there was anything wrong with a policy statement that limited the reduction availability, as this one does. The direct holding is different. The reasoning absolutely addresses the exact reasoning that Padilla D.S. involved. Padilla D.S. went on the assumption that all proceedings under 3582C are not constrained, the words of the opinion, by federal sentencing statutes. Hughes is completely inconsistent with that theory. The Padilla case is based on Dillon. And Hughes did not affect Dillon. Basically, you have an act of lenity. It's a gift that Congress has given you. And you apply that. So what do we do with Dillon? That is not, well, first of all, Dillon involved exactly the situation we think should apply, which is that it did apply it. Specifically, it says at page 827 that we leave all guideline applications in place and that you could comparably lower if you got a lower sentence the first time. So that is exactly what we're saying should apply is the Dillon rule. Under Dillon, the part about act of lenity, if you finish that sentence, they're saying it's a congressionally act of lenity, saying that it is available for persons whose sentencing level was reduced. And what Hughes did is it adopted the position of Padilla D.S. that was rejected before, which is Molina and Pugh. Both cases that talk about what constitutes based on applies in the 3582C context. That was not the law before. That's not what Padilla D.S. said. And so the entire reasoning under Girding, the decision in Padilla, has been kicked out by Hughes. But there in Padilla, as I understood the arguments in Padilla, one was a conflict with 991B, that is the general purposes of the sentencing. Yes. And then there wasn't really an argument or a holding about the based on language, was there? It was implicit in the ruling because the whole argument was about Molina, Martinez, and Pugh saying that that created statutory eligibility. The Sentencing Commission has never been given authority to change eligibility. And that's what they did here. It's an eligibility decision. That's what Hughes now tells us. They were statutorily eligible. The rule at 1776 of Hughes is that- Statutorily eligible, but the guideline said that they would not get a rejection below the lowest rang of the amended guideline. Pre-variance. And that's the error in Padilla D.S. But why is that inconsistent with their eligibility based on based on? Because what the Supreme Court said in Hughes, and it said in a number of different places, but I think most clearly, the general rule is that the ultimate sentence, that means with variance, is based on the guideline range, absent clear demonstration. Well, I'm saying yes. Let's say yes, that's true. But then there is a guideline. The same statute says- If but only if some other additional factor is met. Right. So based on isn't the whole game. Right. Isn't the whole game. It's not the whole answer. It seems to me you're correct about based on, which is probably why there wasn't an argument about it. There really wasn't an argument about it in Hughes. But then the question is, the next requirement in 7582 is that it has to be consistent with a guideline. So if the guideline says, well, even if you were sentenced based on this, the limit of what the reduction can be is this pre-variance lowest of the amended guidelines count, then the question is, why is that an invalid guideline, which is not what Hughes was about? Because that guideline is inconsistent with the statute. If you are statutorily eligible, the sentencing commission  But wait a minute. The statute- If the statute says you're eligible, it's going to be subject to whatever the guidelines say about what the reduction is. Not whatever the guidelines say. I go to, I think, what- Well, the statute says- The 994U is, I think, what we're talking about, which is, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment may be reduced. And that does not say, and there's no place where the sentencing commission is authorized to change eligibility criteria. To back up a minute, our problem here is we're a three-judge court. Is what? We're a three-judge court. And we can only, I mean, your task is not only to prove that you're right ab initio, but that your argument is inconsistent. Your argument is that Hughes is inconsistent with Padilla-Diaz. And there's nothing in Padilla-Diaz about this based on point, is there? Yes, there is. I think that it is- Why not? The assumption of the entire case is that when we're talking about based on and reducing levels, it's deifying the guideline range before variances. And what the evolution of the Supreme Court cases with Molina, Martinez, and Pugh is that we do not worship the guideline range. Mr. Sady, here's my problem. Even if Padilla had never been decided, I'm looking at the statute. And the statute gives this benefit to a person who was sentenced based on a sentencing range that's no longer in effect. That's fine. I agree with you that that's met here. But then the statute says, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission. So even if we're looking at it without Padilla, being based on is only half the game. It still has to be consistent with the applicable policy statements. And the most applicable one is the one you don't like. It's not that we don't like it. It's that under LeBant, it's invalid. That's what we're asking the court to make a determination of. It is invalid in light of Hughes. Because Hughes has provided a description of eligibility that wasn't there before. And in combination with Coons, the Supreme Court has said it's not the Sentencing Commission's job to define eligibility. That's what the statute did. You can decide. But the statute incorporated that. The statute says, if you've been sentenced based on a changed range, you can get a benefit. But only if the amount of the benefit is consistent with these policy statements. So it's not about eligibility. It's about amount. And I don't see anything in Hughes that even addresses that question. Hughes states that it is a general qualification for eligibility under 3582C2, that unless you've shown that there is no consideration of the guideline range, you are eligible. Well, it's based on. But it doesn't say how much you get. And what the statute tells you is to decide if you get zero or more than zero, you look at the policy statements that are specific to that question. But this policy statement is not making a uniform decision. It is isolating out certain persons and saying that they are categorically ineligible, even though they say everybody else is. It's a situation. It's not a person. I mean, the persons whose sentences were based on are the eligible pool. And then in determining how much, you look at the policy statement. And it tells you what the policy is, not about people, but whether there is an appropriate reduction or not. There's never in the history of the guidelines ever been a situation where the limitation is directed at a group. It is uniformly applied. You always have an effective date, or you only have this much you can go down. But you don't end up categorically excluding a group from eligibility. That's what the Padilla court did not approach because they said that the sentencing, that they're not constrained by sentencing statutes. But you look at 994F. But I don't see, again, I'm still staring at Padilla-Diaz. And I don't see where in it there's anything that relies on or interprets the based on language. They say that that is the underlying assumption because they didn't approach the citations to the Supreme Court case. But more importantly, they say we are not That's express. We now know that they are constrained. And in fact, 984F says that the policy statements shall promote with particular attention to the requirements providing for certainty and fairness and reducing unwarranted disparities. That's as express and precise as the 994T statement in the statute that the Supreme Court decided in Le Bon invalidated a similar policy statement. And with the court's permission, I'll reserve the remaining time. You may do that. Thank you. Ms. Zusman. Good morning, and may it please the court, Kelly Zusman, appearing on behalf of the United States. Your Honor, it was almost two years ago today that I stood before this court at this lectern arguing Padilla-Diaz. And one thing I can tell you with some assurance is that the based-on language had nothing to do with that case. We've never challenged that any of these 22 defendants receive sentences that were based on the guidelines and that in each instance, the court simply departed or varied to such an extent that when the guidelines were retroactively reduced, they simply were not eligible for a further reduction. Now, the standard that applies here is not whether or not Mr. Sadie makes some very compelling argument. Put another way, it's not that they weren't eligible. It's that what they would have gotten was the amount to which they were entitled would not have lowered their sentence. Correct. Correct. They were eligible because of the based-on language. Exactly. They were certainly eligible because of based-on. But as this court has already identified, when you're looking at 3582C, you have to look at the entire statute. Based-on is a given. It's not until we drop to the very end of the statute where it says that the reduction has to be consistent with an applicable policy statement issued by the Sentencing Commission. When we turn to the policy statement. That doesn't mean that a policy statement couldn't be invalid. Absolutely. Absolutely correct. And the bond was invalid. If a policy statement were invalid, absolutely. And that's where both Cercero and Padilla-Diaz have already examined all of the constitutional challenges that Mr. Sady has leveled against that guideline and said, it's perfectly OK. It survives rational basis. It's good to go. So if, for example, Hughes, which addressed 11C1C plea agreements and the based-on language, for example, if the Sentencing Commission had said in an application note or a policy statement, well, we don't think you should be able to grant any relief to people who pleaded guilty pursuant to 11C1C. Well, I think Hughes then might well be instructive because Hughes would have invalidated an application note. And it would have prevented the precise situation that you have hypothesized, which is, gosh, isn't it possible for there to be a sentencing policy statement or guideline that runs afoul of the Constitution? Well, Mr. Sady has posited also that a policy statement that singles out a group might be invalid. For example, if you had a policy statement that said, this only applies to people who are over the age of 50 because we think they are more sober citizens and they'll be better able to take advantage of this or some other discriminatory criterion, that would be invalid, I presume. Absolutely. But this deals with a situational question, how much sentence did you get already, which is not personal. And as this Court has already identified, perfectly rational. And I'll note the application note accepts people who receive downward departures or variances for substantial assistance. And this Court has already said, that's rational. It rewards people who have come forward to provide assistance to authority. So in terms of all of the constitutional attacks on the guideline application note itself have been squarely rejected by this Court twice in Tercero and Padilla-Diaz. And as much as he attempts to extend this to Hughes, because that's his hook. He's got to show that Padilla-Diaz is irreconcilable with Hughes. And yet, Hughes is readily reconcilable here because it involved based on, and this case involves the final clause of that statute, that the reductions simply were not consistent with the policy statements. So as we. The, there was, is he re-raising the equal protection argument here? No. Right. As I understand it, he is, through Hughes, raising, re-raising all of the constitutional challenges because they are inconsistent with his understanding of Hughes's holding. I don't find the governmental rational basis approved in Padilla-Diaz particularly persuasive, even on the rational basis basis. But we also know from this Court's rulings on irreconcilability that the three-judge panel cannot overrule a prior panel. You may disagree with the rulings that Judge Fletcher and Judge Nelson did in Tercero and Padilla-Diaz. But the issue before this Court is, can you reconcile those decisions with the Supreme Court's decisions in Hughes? I guess I would be curious, though, as to whether you could do better, i.e., is there a better rational reason than the two relied on there? My best pitch for what the Sentencing Commission was doing, and first of all, I think it's interesting. I don't know if you've looked at the Sentencing Commission's report from August 2018 on the numbers. There are about 50,000 inmates who filed sentence reduction motions under 3582C. Approximately 32,000 of them, in fact, received lower sentences. So the group that we're talking about is actually relatively small. It's about 2,300 inmates who were deemed ineligible because their sentences were already below the amended guideline range. My best pitch, Your Honor, in terms of why this makes sense, is the Sentencing Commission, I think, on a fairly categorical, I call it a meat cleaver as opposed to a scalpel approach, decided that those people who had already received leniency, had already been relieved of the burden of the drug guidelines, weren't entitled to a second bite at the apple. So what they wanted to do was to give those inmates who received sentences that were guideline sentences, that under the understanding that those guidelines were too harsh. So those people who received those sentences that were presumptively too harsh, now have the opportunity to go back to their judges and ask for an additional two-level reduction. My understanding, and I always get these terms confused, is that this group includes people who got variances, but also people who got departures, which are guideline departures. Correct. So they're not non-guideline sentences. They were, in fact, guideline sentences. In the sense, as a technical matter where it's a guideline-based departure, yes, I would agree with you. Yes. Now, how do you interpret Hughes? Hughes came as a relief to those of us who were struggling to understand Freeman on whether or not someone who entered a guilty plea under 11 C1C could still claim that their sentences were based on the guidelines. Because as I'm sure Your Honor is aware, when the parties negotiate an 11 C1C plea agreement, they present it to the judge as, we've agreed you should impose a 120-month sentence. And so the court either accepts or rejects that. And the question was, well, is that still tethered enough to the guidelines in order to deem these people eligible for this 3582C reduction? And the courts across the country were split on how to interpret that. So the Supreme Court in Hughes said, we're looking at the plain language of the statute. Based on is a broad term. They looked at Black's Law Dictionary, and they said based on is very broad. And since we know that district court judges have to actually look at the guidelines before they decide whether or not to accept or reject that 11 C1C plea agreement, that fits within the definition of a sentence that was based on a guideline. So your view is that it doesn't affect this case at all? Correct. OK. So to come back to my problem, I find with regard to variances, I understand your point. But with regard to departures, which are simply an application of the guidelines, and which therefore just result in a calculation that is a guidelines calculation, on an equal protection basis, I find it hard to explain why one kind of departure, substantial assistance counts, but the rest don't. Departures, only departures. And I guess I'm not fully tracking your question. Well, my question is, I'm going back to the merits of the equal protection, which I understand are not directly before us. But I assume what we're going to get here next is a petition for unbanked re-hearing. I think that's a safe assumption. And it will include, likely, an equal protection argument. So that's why I'm trying to understand whether there isn't a clear answer to the equal protection argument that appears in the DS. And the guideline application, though, it doesn't draw a distinction between departures and variances. They're both considered. If the sentence is below the revised guideline range, whether it's a departure or a variance. And I think, as we all know, other than substantial assistance, there's been a great amount of blurring between departures and variances. And frequently, judges use those terms interchangeably. So I think, just as a practical matter, it would be very difficult to have to apply this sort of an application note if we were to say it only applied to variances, but not departures. So basically, in your view, the rational basis that distinguishes it is people who got low sentences and lots of leniency already versus people who didn't. I mean, in a rough sense. Is that your point? Yes, correct. And, Your Honors, unless there are further questions, we would submit. Thank you. Thank you. Mr. Satie, you have some time remaining. I want to encourage you to take a look at this case freshly in light of Hughes for one basic reason, and that is the Padilla-Diaz case, Tercero, were all constrained, said that the sentencing statutes did not constrain analysis under 3582C. That is no longer the case after Hughes. When Hughes was talking about uniformity, it was not uniformity within the guidelines. It was the disuniformity that had been created by the various interpretations of the earlier opinion. It was a clarification that the quote from Dillon doesn't mean that it is an act that is separate from the guidelines, that the guidelines are immersed, the policies are immersed, and that a category of people who are less culpable is not a rational basis. It's not creates unwarranted disparity in violation of the statute. You have to totally do a new analysis because equal protection analysis depends on a legitimate state interest. When we now know that the guidelines policies against disparities apply, that requires a new calculation. If they reopen, in other words, you're who are getting the reopening are going to get disparate sentences from your group, but we don't know that at all. It may be that all that this gets you is to go before a judge and it may well be, and I don't know whether the commission has looked at this, that when the people who didn't earlier get lenity go back to the judge. The judge says, you know what, I'm not going to give you a lower sentence because, in fact, you don't fit into any of the categories under 8553A, which would merit a lower sentence. And if these people came back and say, I already gave you, you already got the departure and the variance, so I'm not going to give you another one. So I mean, that to me is probably the rational basis that it's more likely to be a futile endeavor. It's not because the statistics that we provided you at the briefing include that almost over 95% of the motions are granted for people. And so what we're doing is we're creating a class of people who are not even getting consideration, getting consideration from a district court judge about whether the sentence is too harsh. Judge Gorsuch, before he was Justice Gorsuch, was quoted in Rosales-Morales as saying, why in the world would we leave somebody to linger in prison for a longer time than the law requires? Counsel, you've used your time. Thank you. We appreciate the arguments from both of you. They've been very interesting and helpful. And the case is submitted. Our next case is Walker v. City of Pocatello.
judges: Graber, Berzon, Robreno